IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF NORTH CAROLINA
WESTERN DIVISION

NO. 5:22-CR-38-FL-1

| | |
|---|---|
| UNITED STATES OF AMERICA </br> v. </br> EDWARD ALLEN WHEELER, </br> Defendant. | MEMORANDUM OPINION |

This matter came before the court for sentencing on June 20, 2023. The court memorializes herein the court's reasons for sustaining defendant's objection to the calculation of loss in the presentence report, for purposes of the offense level determination under U.S.S.G. § 2B1.1(b).[1]

## BACKGROUND

Defendant pleaded guilty, with a written plea agreement, to bank fraud, in violation of 18 U.S.C. § 1344(1) and (2). Prior to sentencing, the United States Probation Office prepared a presentence report, which calculated a total offense level of 20 and a criminal history category I, producing a guideline range of 33-41 months.

As pertinent here, the presentence report applied a base offense level 7, pursuant to § 2B1.1(a)(1). Then, based upon a determination that defendant is accountable for an "intended

---

[1] Prior to sentencing, the court allowed in part defendant's motion to withdraw guilty plea or, in the alternative, to be relieved from his agreement that a 14 level increase applies by applying the "intended loss" amount set forth in the guidelines. (6/12/2023 Text Order). The court accordingly terminated defendant's motion for downward departure (DE 22, 23) on the same basis. As a separate issue addressed at sentencing, based upon information in the presentence report, the court declined to grant defendant a reduction for acceptance of responsibility, and the court terminated the government's motion for breach of plea agreement related to the same (DE 42), for the reasons set forth on the record at sentencing. The instant memorandum opinion memorializes only the court's reasons for sustaining defendant's objection to the loss calculation in the presentence report.

loss" of $883,775.92, the presentence report increased defendant's offense level by 14 levels under § 2B1.1(b)(1)(H).

In the instant objection, defendant argued that only an 8 level increase should apply, under U.S.S.G. § 2B1.1(b)(1), based upon an undisputed actual "loss" of $115,292.55, as set forth in the presentence report, (PSR (DE 39) ¶ 76), as opposed to a 14 level increase based upon "intended loss" of $888,775.92. (Id. ¶ 55). Defendant based his argument upon the Fourth Circuit's unpublished decision in United States v. Limbaugh, No. 21-4449, 2023 WL 119577, at *4 (4th Cir. Jan. 6, 2023), and the Third Circuit's published decision in United States v. Banks, 55 F.4th 256 (3d Cir. 2022).

At sentencing, the court heard additional argument from defendant and the government and then sustained defendant's objection to the 14 level increase in offense level, noting that its reasoning for that ruling would be set forth in the instant memorandum opinion.

**COURT'S DISCUSSION**

Section 2B1.1 begins with a base offense level of 7, for bank fraud, and assigns certain offense level enhancements "if the loss exceeded $6,500." U.S.S.G. § 2B1.1(b)(1). In a table that follows, the guidelines provide:

2

| | Loss (apply the greatest) | Increase in Level |
|---|---|---|
| (A) | $6,500 or less | no increase |
| (B) | More than $6,500 | add 2 |
| (C) | More than $15,000 | add 4 |
| (D) | More than $40,000 | add 6 |
| (E) | More than $95,000 | add 8 |
| (F) | More than $150,000 | add 10 |
| (G) | More than $250,000 | add 12 |
| (H) | More than $550,000 | add 14 |
| (I) | More than $1,500,000 | add 16 |
| (J) | More than $3,500,000 | add 18 |
| (K) | More than $9,500,000 | add 20 |
| (L) | More than $25,000,000 | add 22 |
| (M) | More than $65,000,000 | add 24 |
| (N) | More than $150,000,000 | add 26 |
| (O) | More than $250,000,000 | add 28 |
| (P) | More than $550,000,000 | add 30. |

The text of section 2B1.1 does not define "loss." The "commentary" to the guideline, however, under "application note" 3, provides as follows:

> <3. Loss Under Subsection (b)(1).--This application note applies to the determination of loss under subsection (b)(1).>
>
> > <(A) General Rule.--Subject to the exclusions in subdivision (D), <u>loss is the greater of actual loss or intended loss</u>.>
> >
> > > <(i) Actual Loss.--"Actual loss" means the reasonably foreseeable pecuniary harm that resulted from the offense.>
> > >
> > > <(ii) Intended Loss.--"Intended loss" (I) means the pecuniary harm that the defendant purposely sought to inflict; and (II) includes intended pecuniary harm that would have been impossible or unlikely to occur (e.g., as in a government sting operation, or an insurance fraud in which the claim exceeded the insured value).>

3

> <(iii) Pecuniary Harm.--"Pecuniary harm" means harm that is monetary or that otherwise is readily measurable in money. Accordingly, pecuniary harm does not include emotional distress, harm to reputation, or other non-economic harm.>
>
> <(iv) Reasonably Foreseeable Pecuniary Harm.--For purposes of this guideline, "reasonably foreseeable pecuniary harm" means pecuniary harm that the defendant knew or, under the circumstances, reasonably should have known, was a potential result of the offense.>

U.S.S.G. 2B1.1 comment. (n.3) (emphasis added).

The issue raised by defendant's objection was whether the court must defer to the above-emphasized commentary directive that states "loss is the greater of actual loss or intended loss," id., or whether the court should limit loss only to actual loss based on the plain text of § 2B1.1. In determining the deference owed to guidelines commentary, the court turns to the recent decision of the United States Court of Appeals for the Fourth Circuit, in United States v. Campbell, 22 F.4th 438, 444 (4th Cir. 2022).

In Campbell, the Fourth Circuit held that the Supreme Court's decision in Kisor v. Wilkie, 139 S. Ct. 2400 (2019), modified the level of deference owed to guidelines commentary. In particular, Campbell stated that "Kisor . . . substantially 'cabin[ed] the circumstances under which courts defer to agencies' interpretations of their own rules,'" and that Kisor "appl[ies] equally to judicial interpretations of the Sentencing Commission's commentary." Campbell, 22 F.4th at 445 & n. 3 (quoting 139 S.Ct. at 2411 n.3 & 2418).

"Under Kisor, 'first and foremost, a court should not afford . . . deference unless the regulation is genuinely ambiguous after exhausting all the traditional tools of construction.'" 22 F.4th at 445 (quoting 139 S. Ct. at 2415). "In short," if "the plain text of [a guideline] is inconsistent with the Commission's Commentary to that Guideline, and this is the only 'reasonable construction of'" the guideline, then "'a court has no business deferring to any other reading, no

4

matter how much the Government insists it would make more sense.'" Id. (quoting 139 S. Ct. at 2415).

The Third Circuit in Banks applied Kisor in this manner specifically to discern the meaning of "loss" under § 2B1.1(b)(1), and it held that "loss" must mean actual loss and not intended loss as suggested in the commentary. See Banks, 55 F.4th at 258. Applying that standard, the reasoning in Banks is persuasive. Simply put, the term "loss" has a plain dictionary meaning that does not include "intended loss," and the guideline itself does not say anything about "intended loss." Id. Therefore, "loss" under § 2B1.1 must be limited to "actual loss," comprising "the loss the victim actually suffered." Id.

The government suggested in argument at sentencing that the court should decline to follow Banks, because it is not binding precedent, and the court should instead follow longstanding precedent accepting the commentary to § 2B1.1 as controlling. This argument is unavailing, however, because it does not address the holding of Campbell stating that the court should apply Kisor to the guidelines commentary. In addition, the government did not point to any binding Fourth Circuit precedent applying the Kisor standard to the guideline commentary to § 2B1.1. In the absence of any such precedent, the court finds Banks persuasive.

The government suggests that the court should follow Limbaugh, where the Fourth Circuit, in an unpublished decision, declined to find plain error on the part of a district court following the guidelines commentary in determining "loss" under § 2B1.1. Limbaugh, however, recognized the Third Circuit held in Banks "that the commentary in Application Note 3(A) 'impermissibly expands the word 'loss' to include both intended loss and actual loss,' and should be afforded no deference under Kisor." Limbaugh, No. 21-4449, 2023 WL 119577, at *4 (quoting Banks, 55 F.4th at 250). And, Limbaugh emphasized the limits of plain error review, such that the court

5

could not "say that the district court committed a 'clear' or 'obvious' error in treating as valid longstanding Guidelines commentary to which the defendant did not object." Id. Therefore, Limbaugh is not helpful to the government on the substance of the issues raised by defendant's objection.

Although not argued specifically by the government here, the court also considered whether it should decline to follow Kisor and Campbell in construing guidelines commentary, in light of the Fourth Circuit's opinion in United States v. Moses, 23 F.4th 347, 352 (4th Cir. 2022), which was decided twelve days after Campbell. In Moses, the court stated in its opinion that "Kisor, considered on its own terms, does not apply to the Sentencing Commission's official commentary in the Guidelines Manual." Id. at 356 (emphasis added). In Moses, the court applied, instead the standard from Stinson v. United States, 508 U.S. 36 (1993), under which "[t]he only limitation to the binding effect of commentary occurs . . . when the commentary 'violates the Constitution or a federal statute, or is inconsistent with, or a plainly erroneous reading of, [the] guideline.'" Id. at 354 (quoting Stinson, 508 U.S. at 38).

However, as Judge King noted in concurring and dissenting opinion in Moses, ignoring the narrower standard of Kisor directly conflicts with the earlier statements in Campbell requiring application of Kisor to the guidelines commentary. And, "[w]hen published panel opinions are in direct conflict on a given issue, the earliest opinion controls." McMellon v. United States, 387 F.3d 329, 333 (4th Cir. 2004) (en banc). Therefore, Campbell controls on the application of Kisor, and the court cannot apply solely the "inconsistent" standard from Stinson.

In sum, the weight of present authority supports limiting "loss" to actual loss. Therefore, where there was no factual issue as to the amount of actual loss in this case, an 8 level increase instead of 14 level of increase in offense level applied to defendant under § 2B1.1(b)(1).

6

## CONCLUSION

For the foregoing reasons, the court SUSTAINED defendant's objection to the calculation of loss in the presentence report for purposes of the offense level determination under U.S.S.G. § 2B1.1(b).

DATED, this the 6th day of July, 2023.

                                                  LOUISE W. FLANAGAN
                                                  United States District Judge